IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 22, 2003

## DENNIS RAY GILLILAND v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Dickson County**
**No. CR-5279      Robert E. Burch, Judge**

**No. M2002-01865-CCA-R3-PC - Filed November 14, 2003**

The petitioner, Dennis Gilliland, appeals the Dickson County Circuit Court's denial of his petition for post-conviction relief from his 1996 felony murder conviction. He contends that the trial court erred in failing to instruct the jury on the issue of alibi. He also raises ineffective assistance of counsel because his attorney did not request an alibi instruction, requested the dismissal of the premeditated murder count instead of the felony murder count after the jury returned guilty verdicts on both counts, and did not raise relevant arguments about the jury seeing the petitioner in handcuffs. Last, the petitioner claims that he was denied the right to a fair trial by an impartial jury because the jury was allowed to hear evidence that he had been involved in two other, recent shooting deaths. We affirm the denial of the post-conviction petition.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOE G. RILEY and NORMA MCGEE OGLE, JJ., joined.

Jerred A. Creasy, Charlotte, Tennessee, for the Appellant, Dennis Ray Gilliland.

Paul G. Summers, Attorney General & Reporter; Kim R. Helper, Assistant Attorney General; Dan Mitchum Alsobrooks, District Attorney General; and Suzanne Lockert, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

In 1996, a Dickson County jury found the petitioner guilty of premeditated murder and felony murder in connection with the shooting death of Bobby Bush. The trial court vacated the premeditated murder conviction based upon insufficient evidence and entered a judgment of conviction for felony murder with a sentence of life without the possibility of parole. On direct appeal, this court affirmed the felony murder conviction but remanded for resentencing. See State v. Dennis R. Gilliland, No. 01C01-9707-CC-00256 (Tenn. Crim. App., Nashville, Nov. 19, 1998). The Tennessee

Supreme Court upheld the conviction but, instead of remanding for resentencing, modified the petitioner's sentence to life imprisonment. State v. Gilliland, 22 S.W.3d 266 (Tenn. 2000).

In October 2000, the petitioner timely filed for post-conviction relief. Counsel was appointed, and an amended petition was filed on December 17, 2001. The post-conviction court conducted an evidentiary hearing on January 15, 2002; the petitioner's former counsel was the only witness who testified. The post-conviction court took the matter under advisement and issued a written opinion denying relief and dismissing the petition. Aggrieved by the lower court's disposition, the petitioner has appealed.

The evidence adduced at the petitioner's murder trial appears in this court's earlier opinion,[1] from which we quote:

> On July 19, 1995, the defendant asked his mother for gas money. She first offered $10, but the defendant replied he needed more so she gave him $20. The defendant arrived at a local bar called "Daisy Dukes" at approximately 9:30 p.m. that evening. There he joined Ronnie Murphy.
>
> After spending approximately three (3) hours in the bar, the defendant and Murphy left. Murphy testified that the defendant encountered Eddie Christy in the parking lot of the bar. The defendant told Christy about a shooting several weeks earlier wherein the defendant fired .20 gauge shotgun slugs at two (2) brothers named Walton. Both brothers were killed. The grand jury declined to indict the defendant, concluding the homicides were justifiable. Murphy testified that the defendant produced a .20 gauge single-shot shotgun from his truck to show Christy. Murphy observed a box of slug ammunition on the front seat of the defendant's truck at that time.
>
> The defendant followed Murphy to Murphy's house where Murphy left his truck. They proceeded in the defendant's truck to a convenience store to buy beer, arriving sometime after midnight....
>
> The defendant and Ronnie Murphy drove to Donnie Murphy's house. Donnie Murphy was not at home. Ronnie Murphy and the defendant went to the basement to play pool and drink beer. Shortly thereafter, Donnie Murphy and the victim, Bobby Bush, arrived at the house.

---

[1] At the conclusion of the post-conviction evidentiary hearing, the original trial transcripts were offered and designated Exhibit No. 1 to the proceedings. The record before us, however, does not include these transcripts.

. . . The victim began discussing the prior shootings with the defendant. Donnie Murphy testified that the victim did not believe the defendant's statement that he shot the Walton brothers with .20 gauge shotgun slugs from a distance of seventy-five (75) yards. . . .

The victim then pulled from his pocket at least two (2) $100 bills and several other bills, stating that he would bet all of the money that he too would have shot the brothers if faced with the same situation. The defendant looked at the victim's money and stated that he was not impressed. The victim responded that he was not attempting to impress the defendant.

Around 3:20 a.m., the victim said he was going to drive home. . . . The defendant left shortly after the victim, stating he would drive by the victim's house to make sure that he arrived safely. He took a cooler containing the group's remaining beer.

. . . .

Vera Bush, the victim's mother, testified that she awoke briefly at 3:00 a.m. that morning and noticed her son was not at home. She woke again at 4:45 and noticed her son's wrecked truck parked in an unusual place. . . . The victim was neither in the truck nor the house.

The defendant ran out of gas that morning around 5:30. He approached Oda Lovins' house and asked him for a ride to a gas station. The defendant pumped $5 worth of gas in a can and offered to tip Lovins $10 for his effort. Lovins observed a "fairly good wad of bills" in the defendant's billfold. . . .

The defendant then drove to the farm of Bill Freeman. . . . The defendant began talking about the Walton homicides. Later that day Freeman discovered a cooler of beer on his truck, and a farmhand related that he saw a truck similar to the defendant's driving away from the farm.

From the Freeman farm, the defendant proceeded to Green's Market where he purchased a case of beer with $20 cash. He then drove to Clarksville where he ate breakfast at a pancake restaurant and rented a room at the Quality Inn. The defendant paid $44 in cash for the room, rented a movie for $7, and tipped the maid $5 for delivering the movie to the room.

A mail carrier discovered the victim's body lying along a road in rural Houston County around 10:30 that morning. The victim, who had a large sum of currency the previous evening, had only change in his pocket when found.

The defendant's whereabouts for the rest of the day are disputed. The defendant claimed to have visited a riverfront park after leaving the pancake restaurant, then to have traveled back to the "old Lock B bottoms" where he remained until that evening when he presented himself at the Dickson County Sheriff's office. The state presented evidence of the defendant's stay at the Quality Inn in Clarksville.

Lieutenant Randy Starkey with the Dickson County Sheriff's Office testified that he was at the Sheriff's Station No. 2 on the evening of July 20, 1995, when the defendant arrived at the station and engaged him in conversation. Starkey stated that the defendant had been to the station several times as a result of the investigation of the Walton homicides. Thus, when the defendant mentioned drinking beer with the victim at the Murphy residence the previous night, Starkey became interested. He asked the defendant what the defendant knew about the victim. The defendant asked if the victim had gotten into some trouble. Starkey then related the story of the victim being found murdered that morning.

. . . .

The defendant related his version of the previous evening's events to the officers. The defendant neglected to tell the officers about running out of gas, buying beer and renting a motel room that morning. The defendant told the officers he spent the night watching three (3) barges at the river bottoms. The defendant related that he had only $5 in his possession at that time. The fact that the defendant was carrying a shotgun was discovered in normal conversation. Agent Watkins went to the defendant's truck and seized a breeched, unloaded .20 gauge shotgun. Watkins also noticed that the interior of the truck appeared to have been washed recently. Water was pooled in the floorboard, and the truck appeared cleaner than would be expected after driving on gravel roads. The bed was noticeably dirtier than the rest of the truck.

During initial questioning of the defendant, Agent Watkins received a telephone call that he should investigate the Liberty Church Cemetery as a source of possible leads in the victim's death. The defendant was asked to remain voluntarily at the station while officers investigated the cemetery[, and he] walked freely in and out of the station[.] . . .

Earlier in the day, Liberty Church Cemetery was reported to authorities as a site of vandalism. The cemetery is located in Dickson County, a short distance from the victim's residence. Closer inspection revealed a vehicle had driven into the cemetery and knocked over four or five headstones. It was later determined that the victim's truck had knocked the stones over, coming to rest on one of them. A wider set of tracks was also detected at the scene. It was theorized by the state that a larger vehicle pulled the smaller vehicle out of the cemetery. Subsequently, TBI agents were able to show paint on the bumper of the defendant's truck consistent with paint from the victim's truck.

When the officers returned to the station, the defendant was read his rights and his truck was formally seized. The defendant maintained his version of events as previously related to the officers. During questioning, the defendant stated that he had never been inside the victim's truck, nor had the victim been in his. The defendant was arrested for the victim's murder.

The next day two sets of currency were found on the grounds of Sheriff's Station No. 2. The first, $35, was folded and wet and found near a downspout. The second set, $120, was found shortly thereafter and was dry.

At trial, the state presented forensic evidence that the victim died as a result of a .20 gauge shotgun slug being fired into his head from a distance of less than thirty-six (36) inches. TBI agents testified as experts about blood traces removed from the defendant's truck. A forensic scientist, established as an expert in DNA testing, found the blood to be consistent with the victim's blood. The probability of randomly selecting another Caucasian, unrelated to the victim and having the same DNA profile as the blood found in the defendant's truck, was one in 286,000.

*Dennis R. Gilliland*, slip op. at 2-8 (footnote omitted).

-5-

On direct appeal, the petitioner raised nine issues, including the erroneous admission of testimony about the petitioner's involvement in the Walton homicides and the harmful prejudice from appearing before the jury on three occasions while handcuffed. *Id*., slip op. at 2.

In connection with his bid for post-conviction relief, the petitioner alleged numerous grounds. We need not address each claim, as the petitioner has confined his appeal to (1) the trial court's failure to give an alibi instruction; (2) his counsel's ineffectivensss in failing to request an alibi instruction, in securing the dismissal of the wrong murder charge, and in failing to make relevant arguments about the petitioner's appearance in handcuffs; and (3) the denial of a fair trial based on the admission of evidence of his involvement in the Walton homicides.

### Post-Conviction Hearing

At the post-conviction hearing, the petitioner's former counsel testified at length about his representation. Much of counsel's testimony is not directly relevant to the issues before us. In addition counsel's memory oftentimes was sketchy owing, undoubtedly, to the passage of time.

Counsel testified and explained that the Bush homicide charges were originally returned against the petitioner in Houston County. Following a preliminary hearing, counsel was asked to accept an appointment to undertake the petitioner's defense because conflicts of interest had disqualified other local attorneys. After counsel had been in the case for approximately seven months, the charges in Houston County were dismissed, and the petitioner was reindicted in Dickson County.

Counsel testified that a considerable amount of pretrial investigation was performed on the petitioner's behalf. In addition to counsel's efforts, an investigator and another assistant worked on the case and met and discussed issues with the petitioner. Counsel met with the petitioner's family members and obtained useful leads and information from them. He interviewed all known witnesses, except one person who refused an interview. He visited the crime scene and traveled to Nashville to interview Dr. Charles Harlan about his autopsy and to discuss the cause of death.

Counsel said that the theory of defense was that the petitioner was not Bush's assailant. In developing that defense, counsel testified that he moved to exclude any testimony about the petitioner's involvement in the Walton shootings. The trial court denied the motion, but the supreme court later agreed with defense counsel that it was error to admit the evidence. The error, however, was ruled harmless.

Counsel testified that various strategies were used to deal with the circumstantial elements of the state's case. Counsel uncovered photographic evidence that allowed the defense to argue that the crime scene at Liberty Church Cemetery had been badly contaminated. Counsel was aware that the state intended to offer expert DNA testimony about blood traces found in the

petitioner's truck that was consistent with the victim's blood. From counsel's investigation, the presence of the blood could be accounted for based on the victim's presence in the petitioner's truck on an earlier occasion and/or transference while the investigating officers were collecting evidence. Regarding the money found at the police station, counsel moved unsuccessfully to exclude that evidence as speculative and prejudical. Counsel maintained that it was never clear from the evidence introduced how much money the petitioner actually had.

Counsel testified that one of the important issues in the case was the petitioner's whereabouts before and after the homicide. The petitioner had given a statement to law enforcement officials about going to Lock B to look for a woman, after which he stayed at the lock bottoms drinking and watching the barge traffic and later went to Clarksville. The state had a witness, the lock and dam operator on duty, who was prepared to testify that there was no barge traffic during the time period that the petitioner claimed to have seen barges. Counsel testified that his investigator uncovered information that river traffic was only logged in and out when the barges were close to the lock or dam and that the petitioner was eight miles from that site.

Counsel was asked and acknowledged that on three different occasions jurors saw the petitioner in handcuffs as he was being transported to the courtroom. The first two times, counsel testified that he complained to the trial judge in chambers and was assured that the problem would be resolved. When the petitioner was seen the third time in handcuffs, counsel stated that he objected on the record and later argued undue prejudice. Counsel admitted that he did not move for a mistrial.

Regarding the jury verdicts, counsel's memory was inadequate to relate any specifics of what took place. He recalled that the jury returned guilty verdicts on both the premeditated and felony murder counts. However, counsel testified that he was uncertain whether he moved to dismiss the premeditated murder verdict or whether the trial court *sua sponte* dismissed that charge because the state had failed to prove premeditation.

### Alibi Instruction

In his first issue, the petitioner complains that he is entitled to post-conviction relief because the evidence at trial raised the issue of alibi, but the trial court did not give the jury an alibi defense instruction. The post-conviction court rejected the claim as having been waived. We agree.

It is well established that a party may not raise an issue in a post-conviction petition that could have been raised on direct appeal. *State v. Townes*, 56 S.W.3d 30, 35 (Tenn. Crim. App. 2000), *overruled on other grounds by State v. Reginald D. Terry*, ___ S.W.3d ___, No. W2001-03027-SC-R11-CD (Tenn., Jackson, Oct. 30, 2003). "A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented." Tenn. Code Ann. § 40-30-106(g) (2003). "The opportunity to raise the issue during a direct appeal of the conviction, coupled with a failure to pursue that appeal or a failure to raise the issue during that appeal,

constitutes a waiver of the issue for purposes of a post-conviction relief proceeding." *Townes*, 56 S.W.3d at 35. Consequently, the petitioner's failure to raise the alibi instruction issue on direct appeal results in waiver and precludes any review on the merits by this court.

## Ineffective Assistance of Counsel

To obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn. Code Ann. § 40-30-103 (2003). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. *Id.* § 40-30-110(f) (2003). A post-conviction court's factual findings are subject to a *de novo* review by this court; however, we must afford these factual findings a presumption of correctness, which is overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely *de novo* review by this court, with no presumption of correctness. *Id.* at 457. The Tennessee Supreme Court has held that the issue of ineffective assistance of counsel is a mixed question of law and fact and, as such, is subject to *de novo* review. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999).

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution. *Id.*; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). This right to representation includes the right to "reasonably effective" assistance. *Burns*, 6 S.W.3d at 461. In reviewing a claim of ineffective assistance of counsel, this court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 2064 (1984), and that this performance prejudiced the defense, resulting in a failure to produce a reliable result. *Id.* at 687, 104 S. Ct. at 2064; *Cooper v. State*, 849 S.W.2d 744, 747 (Tenn. 1993). To satisfy the requirement of prejudice, a petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding the petitioner's guilt. *Strickland*, 466 U.S. at 695, 104 S. Ct. at 2069-70. This reasonable probability must be "sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S. Ct. at 2068; *see also Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *Cooper*, 849 S.W.2d at 746; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's

conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *See Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980).

The petitioner first insists that former counsel's services were deficient and prejudicial because he did not submit a requested jury instruction on alibi. The petitioner's argument, however, merely rehashes his primary complaint that an instruction was not given and does not address counsel's alleged ineffectiveness. The petitioner has wholly failed to sustain his post-conviction burden with respect to this complaint.

From counsel's testimony at the post-conviction hearing, it is abundantly clear that counsel invested considerable time in his factual and legal investigation of the case. Counsel's testimony stands uncontradicted that he went to the crime scene, interviewed all available witnesses, traveled to Nashville to discuss the homicide with the medical examiner, uncovered independent evidence of crime scene contamination, filed appropriate motions to exclude evidence of the prior shootings and the recovery of money at the police station, developed a strategy to account for the anticipated DNA evidence, and communicated frequently with his client and the client's family. This court will not second-guess counsel's trial strategy, resting as it does on an objectively reasonable investigation. *See Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997) (in addressing attorney performance, courts are not to "second guess" tactical and strategic choices or to measure attorney's representation by "20-20 hindsight").

Furthermore, we are not convinced that the trial evidence adequately raised the question of alibi. In *State v. Byron Looper*, No. E2001-01550-CCA-R3-CD (Tenn. Crim. App., Knoxville, Feb. 3, 2003), *perm. app. denied* (Tenn., Jul. 7, 2003), the court quoted with approval from Black's Law Dictionary defining "alibi" as "[a] defense based on the physical impossibility of a defendant's guilt by placing the defendant in a location other than the scene of the crime at the relevant time." *Id.,* slip op. at 38 (quoting Black's Law Dictionary 72 (7th ed. 1999)). The court further explained,

> "[A] defendant in close enough physical proximity to have committed the crime may deny the criminal activity and may affirmatively assert that he was elsewhere at the critical time. However, if the asserted alternate location is such that, based on the version of events contended for by the defense, it would remain within the realm of physical possibility for the defendant to have committed the crime, then the defense is nothing more than a denial and would not rise to the level of alibi."

*Id*., slip op. at 39 (quoting *Owens v. State*, 809 So. 2d 744, 746-47 (Miss. Ct. App. 2002)).

Measured by the foregoing standard, we do not believe that the defense of alibi was fairly raised by the evidence at the petitioner's trial.

Next, the petitioner argues in conclusory fashion that trial counsel was ineffective in requesting or allowing the trial court to dismiss the jury's guilty verdict on the premeditated murder charge and, instead, to enter a judgment on the felony murder conviction.

The law is settled that premeditated murder and felony murder are not separate offenses, but different theories of guilt for the crime of first degree murder. There is no bar to verdicts, as in this case, being returned on both counts. The verdicts stand as "legitimate finding[s] of fact which the trial court should preserve by merging . . . into one judgment of conviction." *State v. Addison*, 973 S.W.2d 260, 267 (Tenn. Crim. App. 1997). In this case, it does not appear that the jury verdicts were merged into one judgment of conviction for first degree murder. Rather, it appears that after the verdicts were returned, the trial court examined the legal sufficiency of the evidence, found evidence of premeditation to be lacking, and vacated the jury's verdict on that theory of first degree murder. *See Dennis R. Gilliland*, No. 01C01-9707-CC-00256, slip op. at 2 n.1.

We fail to see how counsel can be held constitutionally ineffective as the petitioner claims. The petitioner was not entitled to pick or choose which count or verdict to dismiss. That decision was driven by the legal sufficiency of the evidence, not the petitioner's preference or trial counsel's effectiveness. Moreover, even had the trial court set aside or vacated the felony murder conviction, the state would have been afforded the opportunity to appeal that ruling. *See* Tenn. R. Crim. App. 29(c) ("The state shall have the right of appeal where the court sets aside a verdict of guilty and enters a judgment of acquittal."). Inasmuch as the legal sufficiency of the evidence supporting the felony murder conviction previously was challenged unsuccessfully on direct appeal, no possible showing of prejudice can be made in the context of ineffective assistance of counsel.

The petitioner's final ineffectiveness complaint is equally vague and conclusory. He argues that counsel "failed to point out relevant arguments regarding the Defendant being seen in handcuffs" and that the jury's verdict shows that it "did not listen to or follow the instructions of the trial court." The petitioner raised the issue on direct appeal that he was unfairly prejudiced when he appeared before the jury in handcuffs. This court rejected the issue on the basis that the trial court had given curative instructions to the jury to disregard any glimpses of the petitioner in restraints. *See Dennis R. Gilliland*, slip op. at 11-12.

To the extent that the petitioner is attempting to relitigate the issue anew, he cannot prevail as the issue has been previously determined. A claim under the Post-Conviction Procedure Act is procedurally defaulted if it has been "previously determined," meaning that "a court of competent jurisdiction has ruled on the merits after a full and fair hearing." Tenn. Code Ann. § 40-30-106(h) (2003). Nor does the issue fare any better as an ineffective assistance of counsel claim. Even if we assume that there was some action that counsel did not pursue but should have taken, the petitioner simply has not demonstrated the requisite prejudice required to successfully challenge counsel's effectiveness.

## Due Process

The last issue that the petitioner raises on appeal need not detain us long. The petitioner renews his argument that evidence of his involvement in two fatal shootings a short time before the Bush homicide was erroneously admitted. The petitioner acknowledges that this issue was addressed by the Tennessee Supreme Court and found to be harmless error, but he argues the erroneous admission has not been considered from the due process standpoint of denying him a fair trial by an impartial jury.

A defendant in a criminal case may not "object to the introduction of evidence at his trial upon one ground, deemed by him to be proper, and then, later in a proceeding for post-conviction relief, assert that admission of the evidence complained of violated a constitutional right." *State v. Miller*, 668 S.W.2d 281, 285 (Tenn. 1984). The failure to assert the constitutional ground in the original proceeding constitutes a waiver of any error in the admission of the evidence at issue. *See Ronald C. Mitchell v. State*, No. W1999-01097-CCA-R3-PC, slip op. at 6 (Tenn. Crim. App., Jackson, April 6, 2000) (court questioned whether petitioner had presented new ground for relief when he alleged in connection with post-conviction that admission of pager and money at trial violated due process, after arguing on direct appeal that admission violated Criminal Procedure Rule 16 ); *Terry L. Bomar v. State*, No. C.C.A. 88-22-III, slip op. at 3 (Tenn. Crim. App., Nashville, Sept. 28, 1988) (as petitioner objected to joinder of offenses under applicable procedural rule, he cannot now allege that severance should have been granted on constitutional grounds; issue previously determined).

For all the foregoing reasons, we affirm the post-conviction court's rejection of the petition for post-conviction relief.

_____
JAMES CURWOOD WITT, JR., JUDGE